UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Chapter 7 Case |
| Paul Roger Lyver and Nancy Tate Lyver, | Bky. No. 10-41012 (RJK) |
| Debtors. | |
| Patricia C. McRae | Adversary No. 10-04113 |
| Plaintiff, | |
| Vs. | |
| Paul Roger Lyver and Nancy Tate Lyver, | |
| Defendants. | |

## ANSWER AND COUNTERCLAIM OF DEFENDANTS, PAUL AND NANCY LYVER

### PRELIMINARY STATEMENT

Plaintiff has asserted claims in this adversary proceeding related to the dischargeability of certain alleged obligations of the Debtors to the Plaintiff. The Plaintiff has omitted certain facts and events materially relevant to the determination of the issues and counts of fraud (2-counts), breach of fiduciary duty and willful and malicious injury to property in her Complaint. By the omission of certain facts and events materially relevant to the determinations of the issues, the Plaintiff has grossly and disingenuously distorted the allegations of the Complaint, as to appear intentional, to the detriment of the Defendants and this Court.

# ANSWER

Defendants Paul and Nancy Lyver, for their answer to the Adversary Complaint of Patricia McRae and for their counterclaim, state and allege the following:

1. Except as may be hereafter admitted or qualified, the Defendants generally deny each allegation in the Complaint.

2. The Defendants admit the allegation of paragraph 1 of the Complaint as to the Plaintiffs current address; however, the defendants affirmatively assert that during the time of the events herein disputed, the Plaintiff lived at 15440 70th Avenue North, Maple Grove, MN, directly across the street from the Defendants home of 15451 70th Avenue North.

3. The Defendants admit the allegation of paragraph 2 of the Complaint.

4. Admit the allegations of paragraph 3, 4, and 5 of the Complaint. The laws cited, speak for themselves and require no response.

5. The Defendants deny the allegations of paragraph 6 of the Complaint, except that "Terms were discussed but no written contract was executed.", as the Plaintiff acknowledges. With respect to the other allegations of paragraph 6 of the Complaint, The Defendants affirmatively assert and allege the following:

    a. Defendant Paul Lyver was the developer/builder of the townhouse complex, where both Defendants and Plaintiff resided; but, Defendant Paul Lyver has always left the real estate transactions to others and affirmatively alleges that he did not portray himself as a licensed real estate agent and certainly not in the sale of his own home (see **Exhibit A** attached). The author of Exhibit A lived immediately next door to Plaintiff Patricia McRae, at 15452 70th Avenue North.

b. Defendants Paul and Nancy Lyver and Plaintiff Patricia McRae were friends as well as neighbors, especially Nancy Lyver, in that, she and Patricia McRae worked together, socialized and shared several interests together over a period of almost five years.

c. The Defendants placed their home on the market in early August of 2008. The Plaintiff left a phone message to Defendants stating, "I do not want you to move, but if you are, I absolutely want to buy your house". Patricia McRae had expressed this same sentiment several times to Nancy Lyver, and others, (specifically Renae Larson – another neighbor), over an almost 5 year period.

d. Defendants Paul and Nancy Lyver met with Plaintiff Patricia McRae on August 16th, 2008, at Plaintiff's request, not to discuss the "possibility", but, the "actuality" and "certainty" of Plaintiff purchasing Defendants' home.

e. As Plaintiff Patricia McRae was thoroughly familiar with the defendants' home and the complex, the terms discussed were simple; Ms. McRae would purchase the Defendants' home for $370,000.00, ($15,000.00 less than the asking price). A closing, move in date, of either before Thanksgiving or Christmas, was the only condition discussed. Patricia and Nancy did discuss, with enthusiasm, living together for awhile if Defendants' new residence was not ready at closing. Plaintiff Patricia McRae stated she, "Did not need to sell her home in order to purchase Defendants' home". Ms. McRae laughed that she would now own three homes, (including her Wisconsin lake-home), and would either sell or lease her existing home.

3

f. The meeting between the Plaintiff and Defendants took place over approximately two hours, with perhaps one-half hour discussing the home sale, and the balance with friendly banter.

g. Both Plaintiff and Defendants discussed their financial positions, in general terms, with Defendants informing Plaintiff how opportune the sale was, as Paul Lyver was working with friends to get a project off the ground in northern Minnesota and currently had no regular income. Plaintiff Ms. McRae, unsolicited, offered to help with $40-50,000.00 – the Defendants home equity and her certainty of purchasing - being the collateral. The Defendants stated $30,000.00 would be sufficient to aid the Defendants' current cash flow needs and Ms. McRae voluntarily agreed, saying she would have to wait until Monday to transfer the $30,000.00 funds in her accounts.

h. The meeting ended with both Plaintiff and Defendants excited about the beneficial outcome to both parties. The Defendants affirmatively assert that Plaintiff needed no convincing and was not "coerced" in the verbal agreement. The Defendants removed their home from the market.

i. The Defendants removed their home from the market.

6. With respect the to the allegations of paragraph 7 of the Complaint, the Defendants admit that on Monday, August 18th, 2008 Plaintiff Patricia McRae did give Defendants a check in the amount of $30,000.00, per their August 16th verbal agreement. The Defendants deny the remaining allegations of paragraph 7 of the Complaint and affirmatively assert that Plaintiff Patricia McRae gave the Defendants the $30,000.00, in accord with the verbal agreement.

7. The Defendants deny the allegations of paragraph 8 of the Complaint, except that the Plaintiff acknowledges that "On the envelope containing the "Purchase Agreement" Defendant Paul Lyver had written, "a few minor details to be filled out when we have opportunity". Affirmatively assert and allege that the incomplete and unsigned by Plaintiff, "Purchase Agreement", referred to in paragraph 8 of the Complaint, did not appear and was not presented to the Plaintiff until mid-September, 2008, although back-dated; and, the purchase agreement was related to a separate contemplated transaction, which Plaintiff Patricia McRae completely omits mention of in her Complaint. Further, the Defendants affirmatively assert and allege that Defendants at no time then, or ever, requested Plaintiff Patricia McRae sign the "incomplete" purchase agreement.

8. The Defendants deny the allegations of paragraph 9 of the Complaint, except that the "Purchase Agreement" did contain a signature line and further affirmatively assert that this same page contained language to the extent that a contingency of the sale was, "Plaintiff and Defendants must bow before the supreme Elk mount - Joke", (which was located in Defendants garage). Defendants affirmatively assert that no "listing broker" existed, in whose trust account "earnest monies" could be deposited.

9. The Defendants deny the allegations of paragraph 10 of the Complaint. The Defendants affirmatively assert that at no time, then or since, has Plaintiff discussed or voiced with Defendants any conditions, terms or contingencies, beyond those discussed on August 16th, 2008 with the Defendants except that on or about the third week of September, 2008 Plaintiff did state ".....(she) may have to do so with a "contract for deed".

5

**10.** With respect to the allegations of paragraph 11 of the Complaint, the Defendants affirmatively reallege and reassert paragraphs 7, 8 and 9 of this Answer and deny the allegations of paragraph 11 of the Complaint. The Defendants affirmatively allege and reassert that the "purchase agreement" was not directly related the Plaintiff's and Defendants' agreement and was produced much later than Plaintiff alleges and for a completely separate transaction.

**11.** Defendants admit the allegations of Paragraph 12 of the Complaint and agree with Plaintiff's acknowledgement that she, "never signed the Purchase Agreement". The Defendants affirmatively allege and assert that the verbal agreement of August 16th, 2008 remained the only valid agreement between the Plaintiff and Defendants.

**12.** The Defendants deny the allegations of paragraph 13 of the Complaint and affirmatively allege and assert that no discussions, beyond the August 16th meeting, relative to terms of the purchase, ever took place between the Defendants and the Plaintiff.

**13.** The Defendants deny the allegations of paragraph 14 of the Complaint as not "unbeknownst" to the Plaintiff. The Defendants affirmatively allege and assert that the funds were deposited August 19th, 2008 into the Defendants' accounts per Plaintiff's voluntary offer to fund immediate cash flow needs of the defendants and the Defendants were to deduct said funds from the purchase price of their home, when the Plaintiff closed on the purchase of the home.

**14.** The Defendants deny the allegations of paragraphs 15, 16, 17 and 18 of the Complaint. The Defendants affirmatively allege and assert that all Plaintiff need do, to ascertain the disposition of the $30,000.00 funds, was read her bank statements or simply inquire of her bank. Further, the Defendants affirmatively assert that Plaintiff made no demands for the return of the funds prior to a demand letter from her counsel, on or about October 27th, 2008, and

Plaintiff's subsequent serving of a Summons and Complaint on Defendants, November 10th, 2008.

15. Admit the allegations of paragraph 19 of the Complaint as simply referencing the filing of the Summons and Complaint of November 10th, 2008 served upon Defendants as noted in paragraph 14 above.

16. Admit to the allegations of paragraph 20 of the Complaint as Defendants were not in a position at that time to repay $30,000.00.

17. The Defendants deny the allegation of paragraph 21 of the Complaint. The Defendants affirmatively assert that at no time prior to the settlement of the dispute did the Defendants have sufficient funds in their accounts.

18. With respect to the allegations of paragraph 22 of the Complaint, the Defendants have no knowledge of what reasoning the Plaintiff used in reaching an agreement with the Defendants and therefore deny the allegation. Plaintiff's Exhibit A to the Complaint speaks for itself and requires no response.

19. Admit to the allegations of paragraph 23 of the Complaint, in so far as the confession of judgment, Plaintiff's Exhibit A speaks for itself.

20. With respect to the allegations of paragraph 24 of the Complaint, it was the Defendants understanding, then and now, that the provision in the Confession of Judgment for the debt to survive bankruptcy was unenforceable, the Defendants signed, with that assurance from counsel, and therefore the Defendants deny the allegations of paragraph 24 of the Complaint.

21. Admit to the allegations of paragraph 25 of the Complaint as Plaintiff's Exhibit B speaks for itself and requires no response.

22. Admit to the allegations of paragraph 26 of the Complaint as Plaintiff's <u>Exhibit C</u> speaks for itself and requires no response.

23. The Defendants assert that the Plaintiff has omitted certain facts and events in this case, which have material relevance to the issues and determinations the Plaintiff has requested this court to make. The Defendants assert this is inappropriate and the Plaintiff should be required to replead the Complaint with greater specifity.

24. Notwithstanding the foregoing objection, the Defendants' hereby restate and reallege the allegations and answers contained in the foregoing paragraphs of this Answer and add the following factual responses, relevant to factual events and actions, <u>omitted by the Plaintiff</u>, in her Complaint.

25. On August 18th, 2008 at approximately 3pm Plaintiff Patricia McRae came over to the Defendants' home and handed Defendant Paul Lyver the $30,000.00 check at the door. Defendant Paul Lyver was working out-of-town at the time and was not to see or speak with Plaintiff Patricia McRae for the next three weeks. Defendant Paul Lyver emphasizes that Plaintiff Patricia McRae neither requested nor received any receipt or other memorial to the Plaintiff's and Defendants' verbal agreement of August 16th at the time she turned over the funds. On belief, Defendant Paul Lyver does not recall anything written on the check received from the Plaintiff, other than Plaintiff's assigning the check to the Defendants.

26. Defendant Nancy Lyver did host Plaintiff Patricia McRae on or about August 20th, when Patricia McRae brought her grandchildren over, after informing her daughter she had bought Defendants' home, to see her new home, especially a child's loft area and play area "closet" built by the Defendants for their grandchildren. Defendant Nancy Lyver subsequently did not see or speak with Plaintiff Patricia McRae for approximately the next two weeks.

27. Defendant Paul Lyver had been working on a residential development in northern Minnesota, whose principals were seeking investors. Defendant Nancy Lyver suggested Paul speak with Plaintiff Patricia McRae, as Nancy recalled Patricia mentioning her investments were not doing great, paying out at about 3%. Defendant Nancy Lyver arranged with Plaintiff Patricia McRae to meet with both Defendants the weekend of September 6th and 7th, 2008. In fact, the meeting(s) took place for approximately one hour on each of those two days.

28. The September 6th and 7th meeting(s) produced an interest on Plaintiff Patricia McRae's part and at Defendant Nancy Lyver's suggestion Defendants offered to place the balance of the equity, (approximately $60,000.00 at the time), in their home as partial collateral towards any participation by Plaintiff Patricia McRae in the northern Minnesota project. This gesture aided Defendant Nancy Lyver's concern that her friend be protected as much as possible. Plaintiff Patricia McRae did state that she "was excited, but would need to talk it over with her financial advisors; to wit, Defendant Paul Lyver suggested they would tell her she "nuts" given the residential "balloon bubble" coming to light at the time. However, Defendant Paul Lyver also believed that the northern Minnesota economy was actually growing at the time and had been insulated from the problems associated with many other areas then.

29. In direct relationship to the Defendants' offer to subordinate the balance of the equity in their home to Plaintiff Patricia McRae, should she participate in the project, Defendant Paul Lyver attempted to fill out a purchase agreement, his first ever. Defendant Paul Lyver knew that an LLC and other documentation would need to be filled out and did not know how to correlate that and the equity subordination in the "purchase agreement", so he did not complete the purchase agreement.

**30.** Defendant had back dated the purchase agreement. Defendant Paul Lyver then gave the incomplete document, with an explanation, regarding LLCs, etc., to Plaintiff Patricia McRae with a note on the envelope stating, "a few minor details to be filled out when we have opportunity". The document was given to Plaintiff Patricia McRae on or about September 8th, 2008 relative to the possible participation in the northern Minnesota project.

**31.** On or about September 10th, 2008 Plaintiff Patricia McRae phoned Defendant Paul Lyver and stated"...(she) felt terrible, but after talking to (her) advisors, (she) could not participate in the project." Paul Lyver told her "....do not feel bad, things have a way of working out." Plaintiff Patricia McRae also informed Defendant Paul Lyver that ".....(she) still planned to purchase (Defendants') home, but may have to do so on a – contract for deed – if that could be worked out."

**32.** On or about Wednesday, September 17th Defendant Paul Lyver, by prearrangement with the Plaintiff, was to meet and discuss a "contract for deed". At the time set to meet, Ms. McRae met Nancy Lyver, in the street in front of our homes, and told Nancy that "...(she) had other things going on, and wasn't sure when (she) could meet."

**33.** Subsequently, Defendant Paul Lyver received a phone call from someone pretending to be Plaintiff Patricia McRae. The pretender stated "...(she) had not signed the purchase agreement, therefore the sale of (Defendants') home to (her) was invalid; and, (she) did not want (Defendants') home." When the Defendant Paul Lyver inquired, twice, "To whom am I speaking", the phone went dead. Defendant Paul Lyver redialed the last number and Patricia McRae answered, intoxicated in Defendants opinion, and shouted "I do not want your house and I put a stop payment on the check." In confusion the Defendant responded, "...the check has been cashed and obviously we need to talk soon".

34. Later, the Defendants once again sought a meeting with the Plaintiff to discuss and resolve the situation, which Plaintiff Patricia McRae declined.

35. On September 28th, Defendant Paul Lyver's son was killed in an automobile accident. Plaintiff Patricia McRae attended the funeral the first week of October.

36. Defendants and Plaintiff did not speak to each other again until October 27th, 2008 when Plaintiff Patricia McRae came over to Defendants home and inquired of Defendant Nancy Lyver, our intentions in paying her back; to which, Nancy Lyver responded that we would "....probably need to re-sell our home to do so".

37. The next day Defendants received a letter from Plaintiffs counsel, dated October 27th, demanding payment and alleging theft, fraud, etc..

38. After Defendants responded to Plaintiff's counsel, Plaintiff's counsel arranged with Defendant Paul Lyver, to meet and hopefully resolve the issues. The meeting was to take place on November 10th, 2008 at 6:30pm in Defendants home, with the Plaintiff, her Counsel and Defendants, in attendance. Plaintiff's Counsel arrived at the prearranged meeting, not with the Plaintiff, but instead with a process server, who served the Defendants with a Summons and Complaint alleging theft, fraud, etc..

39. Believing they did have an obligation to Defendant less a nominal amount for removing their home from the market upon their agreement with the Plaintiff, for the Plaintiff's purchase of Defendants home, the Defendants sought mediation in state court.

40. During the pendency of this matter in state court and while with retained counsel, the Plaintiff sought the Maple Grove Police Dept. to arrest the Defendants for "Theft by Conversion.

**41.**     After the suit was settled, Defendants son, Anthony, received at Defendants home, while Defendants were away, harassing phone calls.  Defendants' son phoned the police and learned the phone calls were made from Plaintiff Patricia McRae's phone; and the police responded to that number, warning the offending party.

### FIRST CAUSE OF ACTION

**42.**     In response to paragraph 27 of the Complaint, the Defendants restate and reallege the allegations and answers contained in the foregoing paragraphs of this Answer.

**43.**     The Defendants deny the allegations of paragraph 28 of the Complaint and affirmatively allege it was completely appropriate for the Defendants to cash and use the $30,000.00 check received from the Plaintiff, as such action was fully in accord with the Plaintiff's offer and the Defendants' acceptance which was part and parcel of the agreement between the parties.

**44.**     The Defendants deny the allegations of paragraph 29 and 30 of the Complaint. The Defendants affirmatively assert and the Plaintiff has acknowledged that the written document did not constitute a contract between the parties, in that, it was neither signed by Plaintiff, <u>unaccepted offer</u>, nor complete as noted on the containing envelope, "<u>incomplete offer</u>", by the Defendants.  The Defendants affirmatively allege that the non-contractual document was further removed from the real, verbal agreement, of the parties, in time and context.  Further, the Defendants affirmatively allege that it is completely inappropriate for the Plaintiff to use language from said non-contract to support the allegations of paragraph 29 and 30 of the Complaint.

**45.**     The Defendants deny the allegations of paragraph 31 of the Complaint and Defendants' affirmatively allege the Defendant Paul Lyver never held himself out as a licensed

real estate agent and certainly had no reason to do so in the selling of his own home. The defendants affirmatively assert that the Defendants did not solicit the Plaintiff; but rather, the Plaintiff solicited the Defendants, in the purchase of Defendants home.

**46.** The Defendants deny the allegations of paragraph 32 of the Complaint in so far as the allegations are supported by Plaintiff's allegations of paragraphs 27 through 31 of the Complaint.

## SECOND CAUSE OF ACTION

**47.** In response to paragraph 33 of the Complaint, the Defendants restate and reallege the allegations and answers contained in the foregoing paragraphs of this Answer.

**48.** The Defendants deny the allegations of paragraph 34 of the Complaint and affirmatively allege that the funds obtained were offered by Plaintiff Patricia McRae and accepted by Defendants Paul and Nancy Lyver as to be used for current needs, notwithstanding that the Defendants equity in their home was to be the collateral, then and when, Plaintiff Patricia McRae fulfilled her "verbal" contract to purchase the Defendants home.

**49.** The Defendants deny the allegations of paragraph 35, 36, 37 and 38 of the Complaint except that the Defendants admit their inability to pay the Plaintiff, in full without an installment plan, and may have indicated the possibility of having to file bankruptcy. The Defendants deny the Plaintiffs allegations contained in paragraph 35 and 36 of the Complaint as Defendants have no knowledge of the reasoning used by the Plaintiff in entering into the settlement with the Defendants.

**50.** With respect to the allegations of paragraph 39 of the Complaint, the Defendants assert that this Court should issue a declaratory determination that the obligations of the Defendants to Plaintiff are fully dischargable, including Plaintiff's attorney's fees and costs.

The Defendants affirmatively allege that Plaintiff's allegation of paragraph 39 of the Complaint that, "...(she) could have prevailed in state court action....", is pure speculation and deserves no response.

## FOURTH CAUSE OF ACTION

**51.** In response to paragraph 46 of the Complaint, the Defendants restate and reallege the allegations and answers contained in the foregoing paragraphs of this Answer.

**52.** With respect to the the allegations of paragraph 47 of the Complaint, it is a statement of law which speaks for itself and requires no response, except the Defendants affirmatively allege that no action on their part caused the "...willful and malicious injury by the Debtor(s) (to) the (Plaintiff) or the (Plaintiff's) property as it appropriate to for the Defendants to deposit and use the funds, as fully in accord with the Plaintiff's offer of the funds and the Defendants acceptance of the funds, as part and parcel of the parties valid "verbal" agreement.

**53.** The Defendants deny the allegations of paragraph 48, 49 and 50 of the Complaint. With respect to the allegations of paragraph 48 of the Complaint, the Defendants affirmatively allege that the Plaintiff had only collateral, equity interest in the Defendants home. With respect to the allegations of paragraph 49 of the Complaint, the Defendants affirmatively allege the Defendants depositing of the $30,000.00 was done in accordance with the real agreement between the parties, not a non-contractual written document. With respect to the allegations of paragraph 50 of the Complaint, the Defendants affirmatively allege that their intentions to repay the funds were fully documented in the "confession of judgment" and that the only reason Plaintiff needed to go that far was because of Plaintiff's false representation of theft, fraud, etc.; which, the Defendants fought while always acknowledging the receipt of the funds from the Plaintiff.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

**54.** Plaintiffs Complaint fails to disclose all the relevant facts to support a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

**55.** Plaintiffs' claim to an interest in the dischargeability of the Defendants debt is premised on an unenforceable stipulation of the Confession of Judgment between Defendants and Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

**56.** Some or all of Plaintiffs' claims are based upon a non-contractual written document, the purchase agreement, additionally removed in time and context from the actual "verbal" agreement, thereby negating any material relevance to the determinations of this Court.

### FOURTH AFFIRMATIVE DEFENSE

**57.** Plaintiffs seek interests which are substantially distorted by the omission of relevant facts and events, intentionally omitted to seek greater advantage over the Defendants and to the detriment of the Defendants and this Court.

## NOTICE OF RESERVATION OF RIGHTS

**58.** The Defendants reserve the right to amend and/or supplement their affirmative defenses asserted in this matter.

# COUNTERCLAIM

## DECLARATORY JUDGMENT

Defendants Paul and Nancy Lyver for their Counterclaim against Plaintiff, state and allege the following:

1. On August 15th and August 16th, 2008 the Plaintiff made an unsolicited offer to purchase the Defendants' home. Defendants discussed the terms with the Plaintiff and reached agreement with the Plaintiff. "Verbal", (no written memorial), agreement was reached of August 16th, 2008.

2. The Plaintiff made an offer of $30,000.00 to aid Defendants in their current, (current at the time of the transaction), cash flow needs and agreed, together with the Defendants, that the $30,000.00, (amounting to a short term loan), would be collateralized against the equity the Defendants had in their home and deducted there-from upon the closing of the sale. This agreement was made in conjunction with, as part and parcel of, the August 16th, 2008 "Verbal" agreement between the Plaintiff and the Defendants.

3. The Plaintiff gave the Defendants the $30,000.00 funds, by check, in accordance with the agreement between the Plaintiff and the Defendants.

4. The Plaintiff then announced her purchase to her daughter and memorialized her agreement to purchase the Defendants home when she asked Defendant Nancy Lyver to host her and her grandchildren on a "nickel" tour of her new home a few days after dropping off the check.

5. At no time did Plaintiff request or receive a receipt, document or other memorial to the Plaintiffs and Defendants agreement, (in direct relationship to that agreement).

6. On or about mid-September, 2008 Defendant Paul Lyver gave Plaintiff Patricia McRae an uncompleted "purchase agreement" meant to memorialize the transfer of the Defendants remaining equity in their home should Plaintiff Patricia McRae decide to participate in a separate, separate from the home purchase, investment transaction. Plaintiff Patricia McRae decided not to participate in the separate transaction and the purchase agreement remained incomplete, as noted by Defendant on the "containing envelope" and unsigned by Plaintiff Patricia McRae. The "purchase agreement" document remained a non-binding, non-contractual memorial with the Defendant completing an offer or the Plaintiff signing, accepting an offer.

7. Plaintiff, at no time, voiced any concern, condition, or contingency except for a late September, 2008 phone conversation with the Plaintiff Paul Lyver wherein Plaintiff stated "…(she) may have to purchase, (the home), on a contract-for-deed."

8. Plaintiff, at no time, made any demand for the return of the $30,000.00 funds prior to a letter of demand from Plaintiff's counsel, alleging theft, fraud, etc., and dated October 27th, 2008.

9. Subsequently, on November 10th, 2008 at the time and place proscribed to meet with the Defendants, Plaintiff and Plaintiff's counsel, Plaintiff did not attend; but, instead used the moment to have the Defendants served a Summons and Complaint alleging theft, fraud, etc..

10. The Defendants, at no time, denied having received and used the $30,000.00 provided by the Plaintiff Patricia McRae, as was appropriate for them to do.

11. The Defendants fought "emotionally" the charges of theft, fraud, etc.. The Defendants always believed that they owed Plaintiff Patricia McRae a substantial portion of the $30,000.00 funds; but also, the Defendants believed themselves entitled to some discount for

having removed their home from the market for a period of months and losing potential sale that would have matured successfully.

12. After receiving the Summons and Complaint from the Plaintiff the Defendants did request in their Pro Se / Answer, in state court, that the court force the dispute into mediation. However, not understanding the court process, the Defendants "perhaps" did not pursue this course properly.

13. The Defendants not being able to afford full-time counsel and tiring of the situation finally and reluctantly entered into a "Confession of Judgment" intending to repay the obligation on time and avoid the proscribed penalties.

14. The Defendants did repay approximately $14,000.00 of the original $30,000.00 funds, but were unable to repay the balance of the "Confession of Judgment" installments before having to file for bankruptcy.

15. The Plaintiff has repeatedly used a non-contractual, unsigned, incomplete document to pursue her allegations of fraud, theft, etc. throughout her original Summons and Complaint and including the "Complaint to Determine Dischargeability of Debt" herein argued before this Court. In addition, the unsigned, incomplete document was separate in time and context, from the Defendants having legitimately received the $30,000.00 from the Plaintiff.

16. The Plaintiff has intentionally used the non-contract purchase and intentionally omitted the facts, known to her, surrounding the purchase agreement, to distort and disingenuously create grossly false and misleading allegations, which in turn she intentionally, by omission, used to create grossly false, misleading and frivolous beyond the pale, <u>Causes of Action</u>, including two counts of Fraud, a count of Breach of Fiduciary Duty, and a count of Willful and Malicious Injury to Property in her Complaint and in this Court.

17. The Plaintiff used the same disingenuous tactic and strategy in pursuing Defendants in state court.

18. The Defendants,(now the Trustee), are entitled to a declaration of sanctions against the Plaintiff for having caused the Defendants damages in the removal of their home from the market and for the Plaintiff's knowing and intentional omission(s) of facts and subsequently, the distortion of facts and allegations contained in the bringing of Plaintiff's Complaint against the Defendants and to this Court.

WHEREFORE, the Defendants Paul and Nancy Lyver respectfully request that the Court deny entirely the relief sought by Plaintiff in the First, Second, Third and Fourth Causes of Action of their Complaint, determining that Defendants obligations to the Plaintiff be fully discharged. The Defendants pray the court impose sanctions upon the Plaintiff, (accruing to the Trustee - Dwight R. J. Lindquist), for the Plaintiff's knowing and intentional bringing, by omission and distortion of facts, false charges against the Defendants to this Court, and for such other and further relief as the Court deems just and equitable.

Date: June 21, 2010

By _____

By _____
Paul R. Lyver / Pro Se
Nancy T. Lyver / Pro Se
15451 70th Avenue North
Maple Grove, MN 55311
(612) 708-2020



_EXHIBIT A_

Date: May 26, 2010

To Whom It May Concern:

Re: Paul and Nancy Lyver

My wife Carol and I have known Paul and Nancy Lyver for five years. We purchased our townhouse with Paul's assistance (he was the developer for the townhouse complex). Paul was extremely helpful and knowledgeable regarding changes we made in the home.

Paul never inserted himself in the real estate/purchase side of the transaction, nor did he ever indicate any expertise or knowledge in that area. We trusted Paul to complete changes in our home and he always did what he said he would do and always did it well. There was never any hint or suspicion of any kind on any issue.

Our experience with Paul and Nancy is that they are people with excellent values and integrity. They have always been honest and clear in our relationship. We have no hesitation to vouch for their character.

Carol and I would be happy to address any other issues or concerns regarding Paul and Nancy.

Sincerely,

Pastor Phil and Carol Dell
15452 70th Ave
Maple Grove, MN 55311
763-657-1488 home
612-280-0108 cell
phild@lord of life.org

18500 County Road 101 . Maple Grove, MN 55311 . Phone: 763-420-5015 . Fax: 763-420-7286 . Web site: www.lordoflife.org